**Electronically Filed
Supreme Court
SCWC-13-0000056
04-MAY-2017
08:43 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

JOHN A. WAGNER, JR.,
Petitioner/Defendant-Appellant.

---

SCWC-13-0000056

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000056; CR. NO. 11-1-001K)

MAY 4, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

John A. Wagner, Jr., seeks review of his conviction and sentence for one count of methamphetamine trafficking in the first degree, and two counts of prohibited acts related to drug

paraphernalia.  The Circuit Court of the Third Circuit[1] (circuit court) sentenced Wagner to twenty years' imprisonment on the methamphetamine trafficking charge, and imposed a mandatory minimum term of thirteen years and four months because Wagner had a prior conviction for methamphetamine trafficking.  The Intermediate Court of Appeals (ICA) affirmed the circuit court's Judgment of Conviction and Sentence, and Wagner sought review in this court.

We conclude that the circuit court incorrectly construed Wagner's prior conviction as an element of the offense.  As a result, information about Wagner's prior conviction was submitted to the jury in a stipulation, thus unnecessarily subjecting Wagner to potential prejudice due to the jurors learning of his prior felony conviction.  Accordingly, we vacate the ICA's January 26, 2016 judgment on appeal, and remand to the circuit court for a new trial.

## I.  Background

### A.   Circuit Court Proceedings

This case arises from a police search of Wagner's residence on December 23, 2010, executed pursuant to a search warrant.  During the search, the police found 45.3 grams of a "crystalline substance" and drug paraphernalia.  That same day,

---

[1]      The Honorable Elizabeth A. Strance presided.

Wagner was arrested for methamphetamine trafficking and possession of drug paraphernalia.

On December 27, 2010, Wagner was initially charged with four counts relating to the events of December 23, 2010. The State filed an Amended Complaint on December 28, 2011, and a Second Amended Complaint on September 4, 2012, alleging three counts.[2] In Count I, Wagner was charged with methamphetamine trafficking in the first degree in violation of Hawai'i Revised Statutes (HRS) § 712-1240.7(1)(a) (Supp. 2006), alleging that Wagner knowingly possessed one ounce or more of methamphetamine "with one prior conviction for Methamphetamine Trafficking." Counts II and III both alleged that Wagner "used, or possessed with intent to use, drug paraphernalia, zip packet(s) and/or scale(s) and/or straw(s), to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance" in violation of HRS § 329-43.5 (Prohibited Acts Related to Drug Paraphernalia).

## 1. Trial

At jury trial, Wagner stipulated that he had a prior

---

[2] Count III in the original complaint, which alleged attempted methamphetamine trafficking in the first degree, was not included in the Second Amended Complaint.

conviction for methamphetamine trafficking.  However, the parties further agreed that the jury would not be advised that Wagner's prior conviction was for a methamphetamine trafficking offense, but rather only that it was a felony.

The State's evidence at trial established that when the police arrived at Wagner's residence to execute its search warrant, Wagner and his fiancee, Deshalynn Pea, were on the lanai at the front of the house, and Wagner's mother and other family members were inside the residence.  The State's evidence also established that the police found in Wagner's room prescription pill bottles with Wagner's name on them, and Wagner's wallet, which held his University of Hawai'i student identification card, his Visa card, and his social security card.  The police also found Pea's wallet on the bed.

Further, the State's evidence established that the "sixteen packets of a white crystalline substance" recovered from Wagner's room tested positive as approximately 45.38 grams, or about 1.6 ounces, of methamphetamine.  The State also established that a methamphetamine smoking pipe, several zip packets, and a digital scale and straw, used to weigh and package drugs, were recovered from Wagner's room.  Additionally, the State established that the residual contents found within the drug paraphernalia were methamphetamine.  The State also established

4

that in Wagner's room, $10,000 in a "drug roll" was recovered from one of Wagner's shirt pockets, $967 was found on Wagner's bed, a notebook with drug slang terms written inside was recovered, and multiple cell phones with phone numbers affixed to the exterior, commonly used to facilitate drug dealings, were recovered.

Just prior to the State resting its case, the court read the stipulated language relating to Wagner's prior conviction to the jury:

> A conviction for Count 1 in this matter requires the prosecution to prove beyond a reasonable doubt the element that defendant [Wagner] has had one prior conviction for a felony prior to December 23rd, 2010. For purposes of Count 1 in this matter, the parties have stipulated that prior to December 23rd, 2010, [Wagner] was convicted of one felony offense.

The court then further instructed the jury:

> You must not consider the prior conviction for any purpose other than conclusive proof beyond a reasonable doubt that [Wagner] was convicted of one felony offense. You must not speculate as to the nature of the prior conviction. You must not use any evidence of a prior conviction to conclude that because [Wagner] has had a prior felony conviction, that he is a person of bad character and therefore must have committed the offenses in this case.
> In considering the evidence for the limited purpose for which it has been received, you must weigh it in the same manner as you would all other evidence in this case and consider it along with all other evidence in this case.

Wagner testified in his own defense. Wagner admitted that he had previously used methamphetamine and was familiar with its effects, referring to himself as an "ex-addict." Wagner

5

confirmed that methamphetamine was found in his room, but denied that it was his and stated that he had never seen it in his room before. Wagner further contended that the pipe found in his room did not belong to him.

The following limiting instruction was given to the jury at the end of trial without objection:

> You have heard evidence that the defendant at another time may have engaged in or committed other crimes, wrongs, or acts. This evidence may be considered only on the issue of the defendant's knowledge of methamphetamine, its packaging and paraphernalia, identity of the person who committed prior felony offense charged, and whether the alleged conduct resulted from a mistake or accident.
> Do not consider this evidence for any other purpose. You must not use this evidence to conclude that because the defendant at another time may have engaged in or committed other crimes, wrongs, or acts, that he is a person of bad character, and therefore must have committed the offenses charged in this case.

On September 13, 2012, the jury found Wagner guilty of all three charges. On September 18, 2012, the State filed a motion to impose a mandatory minimum term of imprisonment, pursuant to HRS § 712-1240.7(3)(a). The State argued that Wagner's previous conviction for methamphetamine trafficking "mandates the imposition of a mandatory minimum term of imprisonment of between six years, eight months and thirteen years, four months[.]"

## 2. Sentencing

On November 16, 2012, the court held a sentencing hearing. Before any substantive matters were addressed, Wagner

6

orally moved to dismiss his counsel.  The court then gave Wagner a copy of the State's motion to impose a mandatory minimum sentence and the presentence report, and recessed to give Wagner time to review the motion and "have a full understanding" of the proceeding.

After the recess,[3] the court confirmed that Wagner was ready to proceed, and engaged in a colloquy with Wagner to determine if Wagner understood that he:  (1) was at a disadvantage because he was not trained to represent himself; (2) would be subject to a prison sentence of up to thirty years with a mandatory minimum of up to thirteen years; (3) had the constitutional right to be represented by an attorney; and (4) had a right to court-appointed counsel.  Wagner responded that he had no questions in general or about the possible sentence he faced.

Wagner stated that his decision to waive his right to an attorney was voluntary, and the court found that he "voluntarily, intelligently, and knowingly" waived his right to be represented by an attorney.  The court then discharged Wagner's counsel.  When asked if Wagner had any response to the State's motion to impose a mandatory minimum sentence, Wagner

---

[3]     Upon review of the record, the length of the recess is unclear. However, before the court recessed, it indicated that it would "pass" the instant case "until 10 o'clock."

stated "[n]o response."[4]

The court granted the State's motion to impose a mandatory minimum sentence. The court then sentenced Wagner to twenty years' imprisonment for methamphetamine trafficking in the first degree, with a mandatory minimum term of thirteen years and four months; and five years for each count of prohibited acts related to drug paraphernalia, with the sentences running concurrently.

On November 19, 2012, the court filed its Judgment of Conviction and Sentence. On December 12, 2012, Wagner was appointed counsel for purposes of appeal. On January 29, 2013, Wagner filed his notice of appeal.

## B. ICA Appeal

After Wagner's appointed counsel filed an opening brief at the ICA, his counsel filed a motion to withdraw as Wagner's counsel. The ICA remanded the case to the circuit court, and the circuit court granted the motion to withdraw, but required Wagner's counsel "to remain as standby counsel" to advise Wagner regarding the "practice and procedure of the appellate courts."

Wagner then filed a handwritten pro se opening brief

---

[4] We have significant concerns regarding the circuit court allowing Wagner to waive his right to counsel immediately before proceeding to sentencing. However, we need not address this issue since we are granting a new trial on other grounds.

8

with the ICA, arguing that the circuit court abused its discretion in allowing the introduction of his prior conviction in front of the jury at trial. Wagner argued that he was prejudiced by the introduction of his conviction, and contended that his stipulation should have "effectively remove[d] that element of the crime from the charge." Wagner argued that he faced unfair prejudice "[e]ven with the limited [sic] instructions . . . [.]"

Wagner further argued that the circuit court erred by not giving curative instructions prior to the introduction of Wagner's prior bad acts. Wagner contended that the State and his counsel's "repetitious statements" regarding his criminal history "no doubt left an indelible mark upon the jury's memory [that] no instructions could cure."

The State argued that the circuit court did not abuse its discretion by allowing the introduction of Wagner's prior conviction because Wagner stipulated to the conviction. The State asserted that the stipulation "was merely a stipulation that [Wagner] had a prior conviction so the State need not call additional witnesses merely to prove [Wagner] had a prior conviction. It was not a stipulation that the prior conviction would never be mentioned at trial."

The ICA held that the circuit court did not abuse its

9

discretion when it "allowed reading to the jury the parties' stipulation regarding Wagner's prior felony conviction" because the circuit court properly "followed the procedure mandated . . . where a defendant [stipulates] to a prior conviction for the same offense where such was an element of the current offense."

Chief Judge Nakamura concurred with the result but wrote separately, arguing that under HRS § 712-1240.7, a defendant's prior methamphetamine trafficking convictions should be construed as a "sentencing enhancement factor for the judge to decide," rather than an "element of the offense for the jury [to decide]." In his concurrence, Chief Judge Nakamura advanced three arguments in support of his position to construe the prior convictions as a sentencing factor.

First, Chief Judge Nakamura argued that the plain language of HRS § 712-1240.7 supported his position, since a defendant's prior convictions are only referenced in the sentencing provision of the statute. Second, Chief Judge Nakamura argued that construing a defendant's prior conviction under HRS § 712-1240.7 as a sentencing factor would not contravene a defendant's right to a jury trial because it would fall squarely within the exception recognized in Apprendi v. New Jersey, 530 U.S. 466 (2000), that the fact of a prior conviction

need not be submitted to the jury.[5]  Third, Chief Judge Nakamura argued that construing a defendant's prior conviction as a sentencing factor would avoid the risk of unfair prejudice to the defendant due to the jury's knowledge of his or her previously convicted crime.

However, Chief Judge Nakamura concluded that based on controlling case law, including State v. Domingues,[6] State v. Kekuewa,[7] State v. Ruggiero,[8] and State v. Murray,[9] the circuit court did not err in:  (1) treating Wagner's prior conviction as an element of the offense; and (2) permitting the jury to be informed by stipulation that Wagner had a prior felony conviction.

Therefore, the ICA affirmed Wagner's conviction and sentence.  On January 26, 2016, the ICA entered its judgment on appeal.

---

[5]     This argument was written before our holding in State v. Auld, 136 Hawaiʻi 244, 361 P.3d 471 (2015), where we found that "Apprendi's 'fact of prior conviction' exception does not apply to repeat offender sentencing under HRS § 706-606.5, and that a jury is required to find that the defendant's prior conviction(s) have been proved beyond a reasonable doubt to trigger the imposition of a mandatory minimum sentence under that statute."  Id. at 257, 361 P.3d at 484.  Additionally, our holding in Auld was given prospective effect only.  Id.

[6]     106 Hawaiʻi 480, 107 P.3d 409 (2005).

[7]     114 Hawaiʻi 411, 163 P.3d 1148 (2007).

[8]     114 Hawaiʻi 227, 160 P.3d 703 (2007).

[9]     116 Hawaiʻi 3, 169 P.3d 955 (2007).

11

## II.  Standards of Review

### A.  Admissibility Of Prior Bad Act Evidence

Wagner argues that he was unfairly prejudiced by the introduction of his prior conviction, and suggests it should not have been submitted to the jury even with a limiting instruction.

> "Prior bad act" evidence under [Hawaiʻi Rules of Evidence ([HRE])] Rule 404(b) is admissible when it is 1) relevant and 2) more probative than prejudicial.  A trial court's determination that evidence is "relevant" within the meaning of HRE Rule 401 is reviewed under the right/wrong standard of review.  However, a trial court's balancing of the probative value of prior bad act evidence against the prejudicial effect of such evidence under HRE Rule 403 is reviewed for abuse of discretion.  An abuse of discretion occurs when the court clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant.

State v. Behrendt, 124 Hawaiʻi 90, 102, 237 P.3d 1156, 1168 (2010) (citation and ellipses omitted).

### B.  Sufficiency Of The Evidence

The appellate court reviews the sufficiency of the evidence on appeal as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawaiʻi 128, 145, 938 P.2d 559, 576 (1997)).

"'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (internal quotation marks and citation omitted).

### III.  Discussion

Although Wagner raises many issues in his application for writ of certiorari, we find the following issue dispositive: "[Whether] [t]he [circuit] court abused its discretion in allowing the introduction of Mr. Wagner's prior conviction . . . at trial[.]"

We conclude that circuit court erred in construing Wagner's prior methamphetamine conviction as an element of the offense, rather than a sentencing enhancement factor. Accordingly, information about the conviction should not have been presented to the jury.

First, the plain language of HRS § 712-1240.7 (Supp. 2006), demonstrates that a defendant's prior conviction should not be construed as an element of the offense. HRS § 702-205 (1993) provides that: "The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition of the offense, and (b) Negative a defense (other than a defense based on the statute of

13

limitations, lack of venue, or lack of jurisdiction)." See also State v. Murray, 116 Hawaiʻi 3, 7-8, 169 P.3d 955, 959-60 (2007).

The legislature has the ability to make a defendant's prior conviction an attendant circumstance, and accordingly, an element of the offense. See, e.g., HRS § 291-4.4 (Supp. 2000) (repealed 2000).[10] One way for the legislature to indicate that

_____

[10] Prior to HRS § 291E-61 (Supp. 2001) being enacted, the former OVUII statute, HRS § 291-4.4 (Supp. 2000) (repealed 2000), provided in relevant part:

> (a) A person commits the offense of habitually driving under the influence of intoxicating liquor or drugs if, during a ten-year period the person has been convicted three or more times for a driving under the influence offense; and
>
> > (1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, . . . [or]
> >
> > (2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath[.]

This court stated in State v. Kekuewa that:

> According to the legislative history of HRS § 291-4.4, the requisite prior DUI convictions were considered an element of the offense. See House Stand. Comm. Rep. No. 844, in 1995 House Journal, at 1345 ("This bill already includes as an element of habitually driving under the influence, three convictions for DUI." (Emphasis added.)). The purpose of HRS § 291-4.4 was to "establish a felony offense for those who are convicted of habitually driving under the influence of intoxicating liquors or drugs." Id.

114 Hawaiʻi 411, 432, 163 P.3d 1148, 1169 (2007) (citing State v. Shimabukuro, 100 Hawaiʻi 324, 328 n.12, 60 P.3d 274, 278 n.12 (emphasis in original)).

14

intent is to include the requirement of a prior conviction in the same portions of the statute that define the required conduct and results of conduct to commit the offense.

Here, nothing in the plain language of HRS § 712-1240.7 suggests that a prior conviction is an element of the offense. HRS § 712-1240.7 (Supp. 2006) provides:

> **Methamphetamine trafficking in the first degree**.
> (1) A person commits the offense of methamphetamine trafficking in the first degree if the person knowingly:
>> (a) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of one ounce or more containing methamphetamine or any of its salts, isomers, and salts of isomers;
>> (b) Distributes one or more preparations, compounds, mixtures, or substances of an aggregate weight of one-eighth ounce or more containing methamphetamine or any of its salts, isomers, and salts of isomers;
>> (c) Distributes methamphetamine in any amount to a minor; or
>> (d) Manufactures methamphetamine in any amount.
>
> (2) Methamphetamine trafficking in the first degree is a class A felony for which the defendant shall be sentenced as provided in subsection (3).
>
> (3) Notwithstanding sections 706-620(2), 706-640, 706-641, 706-659, 706-669, and any other law to the contrary, a person convicted of methamphetamine trafficking in the first degree shall be sentenced to an indeterminate term of imprisonment of twenty years with a mandatory minimum term of imprisonment of not less than two years and not greater than eight years and a fine not to exceed $20,000,000; provided that:
>> (a) If the person has one prior conviction for methamphetamine trafficking pursuant to this section or section 712-1240.8, the mandatory minimum term of imprisonment shall be not less than six years, eight months and not greater than thirteen years, four months;
>> (b) If the person has two prior convictions for methamphetamine trafficking pursuant to this section or section 712-1240.8, the

15

> > mandatory minimum term of imprisonment shall be not less than thirteen years, four months and not greater than twenty years; or
>
> (c) If the person has three or more prior convictions for methamphetamine trafficking pursuant to this section or section 712-1240.8, the mandatory minimum term of imprisonment shall be twenty years.

As set forth in the plain language of HRS § 712-1240.7, the provisions establishing the prohibited conduct for methamphetamine trafficking in the first degree are set forth in subsections (1)(a)-(d) of the statute. A defendant's prior conviction is not mentioned in any of those subsections, nor do those subsections integrate the parts of the statute which refer to a defendant's prior conviction. Instead, prior convictions are only mentioned in a separate subsection of the statute, HRS § 712-1240.7(3), which provides for the defendant's sentencing. See HRS § 712-1240.7(2).

Further, nothing in HRS § 712-1240.7's legislative history indicates that the drafters intended for a defendant's prior conviction to be construed as an element of the offense. See H. Stand. Comm. Rep. No. 665-06, in 2006 House Journal, at 1359 (stating only that the bill "[a]dd[ed] methamphetamine trafficking in the first and second degree").[11] Therefore, based

---

[11] In contrast to HRS § 712-1240.7's legislative history, in State v. Murray, this court reasoned that the legislative history of HRS § 709-906(7) supported its holding that a defendant's prior abuse conviction should be

(continued...)

16

on the plain language of HRS § 712-1240.7 and its legislative history, it appears that the legislature intended that a defendant's prior conviction be construed as a sentencing enhancement factor and not an element of the offense.

There are three prior decisions of this court involving the offense of operating a vehicle under the influence of an intoxicant (OVUII) that are relevant to this analysis, but distinguishable from the instant case.  State v. Domingues, 106 Hawai'i 480, 107 P.3d 409 (2005); State v. Kekuewa, 114 Hawai'i 411, 163 P.3d 1148 (2007); State v. Ruggiero, 114 Hawai'i 227,

---

(...continued)

construed as an element of the felony offense because the drafters' intent was to impose a greater degree of offense on repeat offenders.  Id. at 8, 169 P.3d at 960.  In Murray, this court outlined HRS § 709-906's legislative history:

> [I]n 1998, HRS § 709-906 was amended to include subsection (7) as follows: "(7) For any subsequent offense occurring within two years after a second misdemeanor conviction, the person shall be charged with a class C felony."  1998 Haw. Sess. L. Act 172, § 8 at 647.  At that point the legislature stated that "an enhanced grade of offense for repeat criminal behavior sends a message to the repeat offender that such behavior will not be tolerated and will be treated as a serious offense."  Sen. Stand. Comm. Rep. No. 3252, in 1998 Senate Journal, at 1315 (emphases added).
>
> In 2002, HRS § 709-906(7) itself was amended to read, "(7) For a third or any subsequent offense that occurs within two years of a second or subsequent conviction, the person shall be charged with a class C felony." 2002 Haw. Sess. L. Act 5, § 1 at 54 (emphasis added).  The legislature stated that the 2002 amendment "limit[ed] misdemeanors to the first and second offense, while making it a class C felony for any third and subsequent offense." Stand. Comm. Rep. No. 2949, in 2002 Senate Journal, at 1418.

Id. at 8-9, 169 P.3d at 960-61 (emphasis in original).

160 P.3d 703 (2007). In each of these cases, this court found that a defendant's prior convictions were an element of the offense. Domingues, 106 Hawai'i at 487-88, 107 P.3d at 416-17; Kekuewa, 114 Hawai'i at 419, 163 P.3d at 1156; Ruggiero, 114 Hawai'i at 238, 160 P.3d at 714 (citation omitted).

In Domingues, the defendant was charged with, inter alia, habitually driving under the influence of intoxicating liquor or drugs. 106 Hawai'i at 482-83, 107 P.3d at 411-12. This court considered whether a defendant's prior convictions were an element of the offense under a newly enacted statute, HRS § 291E-61 (Supp. 2000).[12] Id. at 487-88, 107 P.3d at 416-17.

_____

[12]     HRS § 291E-61 (Supp. 2000) in relevant part provides:

>       (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
>       (1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
>
>       (2)    While under the influence of any drug that impairs the person's ability to operate the vehicle in a careful and prudent manner; [or]
>
>       (3)    With .08 or more grams of alcohol per one hundred ten liters of breath . . . .

HRS § 291E-61(b) discusses the sentences that shall be imposed for a defendant who committed the instant OVUII offense, and provides for increased punishment if a defendant has prior OVUII convictions:

>       (b) A person committing the offense of operating a vehicle under the influence of an intoxicant shall be sentenced as follows without possibility of

(continued...)

18

Despite the differences between HRS § 291-4.4 (the repealed statute) and HRS § 291E-61, this court held that a defendant's prior convictions under HRS § 291E-61(b) were an element of the

---

[12](...continued)
        probation or suspension of sentence:

> (1)    For the first offense, or any offense not
>        preceded within a five-year period by a
>        conviction for an offense under this
>        section or section 291E-4(a):

. . . .

[Punishment including attendance at a substance abuse rehabilitation program; license suspension; and 72 hours of community service, between two and five days of imprisonment, or a fine between $150 and $1,000]

> (2)    For an offense that occurs within five
>        years of a prior conviction for an offense
>        under this section or section 291E-4(a):

. . . .

[Increased punishment over a first offense, including possible imprisonment of between five and fourteen days]

> (3)    For an offense that occurs within five
>        years of two prior convictions for
>        offenses under this section or section
>        291E-4(a):

. . . .

[Increased punishment over one prior conviction, including mandatory imprisonment of between ten and thirty days]

> (4)    For an offense that occurs within ten
>        years of three or more prior convictions
>        for offenses under this section, section
>        707-702.5, or section 291E-4(a):

. . . .

[Increased punishment over two prior convictions]

An offense under this paragraph is a class C felony.

19

offense. Id. This court reasoned that HRS § 291E-61 established a "hierarchy" of separate offenses, including three petty misdemeanors and one class C felony. Id. This court also reasoned that HRS § 291E-61(b)(1)-(4) included prefatory language requiring qualifying prior convictions, and such language "describe[d] attendant circumstances that are intrinsic to and 'enmeshed' in the hierarchy of offenses that HRS § 291E-61 as a whole describes." Id. at 487, 107 P.3d at 416 (citation omitted). This court further reasoned that:

> Indeed, "[a]n offense under [HRS § 291E-61(b)(4)] is a class C felony . . . entitling a defendant to a jury trial, whereas the offenses described in HRS §§ 291E-61(b)(1) through 291E-61(b)(3) would appear to be petty misdemeanors, as to which no right to a jury trial would attach. . . . If the prefatory language of HRS §§ 291E-61(b)(1) through 291E-61(b)(4) were mere "sentencing factors" that the prosecution was not obliged to allege and prove to the trier of fact . . . then defendants charged with HRS § 291E-61 offenses would have no idea what the particular offense was that they were charged with committing or whether they were entitled to a jury trial.

Id. at 487 n.8, 107 P.3d at 416 n.8.

Two years after Domingues, this court addressed the validity of Domingues' analysis of HRS § 291E-61 in State v. Kekuewa. In Kekuewa, this court rejected the State's request to overrule Domingues "to the extent that it characterizes the provisions set forth in HRS § 291E-61(b)(1)-(4) (Supp. 2002)[13] as

---

[13] The legislature's amendments in 2002 did not affect HRS § 291E-61's substantive language, but added an additional fine for offenders to pay to the neurotrauma special fund. See 2002 Haw. Sess. Laws Act 160, § 11 at
(continued...)

attendant circumstances." 114 Hawai'i at 419, 163 P.3d at 1156. However, this court acknowledged that a "fair reading of HRS § 291E-61(b) (Supp. 2002) provides the initial impression that its contents describe sentencing factors, rather than attendant circumstances, given the fact that HRS § 291E-61(b) (Supp. 2002) is prefaced with language stating that 'a person committing the offense of [OVUII] shall be sentenced as follows[.]'" 114 Hawai'i at 420, 163 P.3d at 1157 (emphasis in original).

Nonetheless, this court recognized that construing HRS § 291E-61(b)(1)-(4) as "extrinsic sentencing factors[,]" rather than attendant circumstances elements, "would have raised serious concerns regarding the statute's constitutionality, given a defendant's inability to ascertain the class and grade of the offense charged (i.e., a petty misdemeanor or a class C felony) and whether the right to a jury has or has not attached." Id. at 420, 163 P.3d at 1157. Thus, this court concluded that given the "constitutional doubt" that a defendant would not have "sufficient notice of (1) whether he or she was charged with a petty misdemeanor or class C felony, and (2) whether he or she was entitled to a jury," Dominques' holding should not be overruled. Id. at 421, 163 P.3d at 1158.

---

[13](...continued)
566-67.

In contrast, here, the due process notice concerns that this court identified in Kekuewa and Domingues are not present. HRS § 712-1240.7 establishes felony offenses only, rather than a hierarchy of misdemeanors and felonies, and thus Wagner was entitled to a jury trial in any event. Moreover, Wagner was on notice of the potential enhanced sentences, as the State asserted its intent to utilize Wagner's prior conviction in its Amended Complaint.

In State v. Ruggiero, this court considered whether Domingues' analysis of HRS § 291E-61 remained valid after the legislature amended HRS § 291E-61 in 2003. In 2003, the drafters removed the class C felony from HRS § 291E-61 for a fourth OVUII offense within ten years, previously set forth in HRS § 291E-61(b)(4). The legislature then created a separate offense of "Habitual[] OVUII" codified at HRS § 291E-61.5 (Supp. 2003).[14]

---

[14]    HRS § 291E-61.5 (Supp. 2003) (Habitually operating a vehicle under the influence of an intoxicant) provides in relevant part:

    (a) A person commits the offense of habitually operating a vehicle under the influence of an intoxicant if:

        (1)    The person is a habitual operator of a vehicle while under the influence of an intoxicant; and

        (2)    The person operates or assumes actual physical control of a vehicle:

            (A)    While under the influence of alcohol in an amount sufficient to impair
                                                (continued...)

22

See 2003 Haw. Sess. Laws Act 71, §§ 1 and 3 at 123-26.

In Ruggiero, this court affirmed the Domingues'

analysis and held that Domingues:

> [R]etains its vitality inasmuch as considerations of
> due process continue to require that the aggravating
> factors set forth in HRS § 291E-61(b)—-all of which
> remain "attendant circumstances that are intrinsic to
> and 'enmeshed' in the hierarchy of offenses that HRS §
> 291E-61 as a whole describes" . . . be alleged in the
> charging instrument and proven beyond a reasonable
> doubt at trial.

Ruggiero, 114 Hawai'i at 238, 160 P.3d at 714 (footnote omitted)

(citing Domingues, 106 Hawai'i at 487, 107 P.3d at 416)).

Thus, Ruggiero is distinguishable since the due process

concerns cited by the court there are not present in the instant

case.

In State v. Murray, 116 Hawai'i 3, 169 P.3d 955 (2007),

this court considered the recidivist provisions of the offense of

---

[14](...continued)

> the person's normal mental faculties
> or ability to care for the person
> and guard against casualty . . . .

(b) For purposes of this section: . . .

A person has the status of a "habitual operator
of a vehicle while under the influence of an
intoxicant" if the person has been convicted three or
more times within ten years of the instant offense,
for offenses of operating a vehicle under the
influence of an intoxicant.

(c) Habitually operating a vehicle while under
the influence of an intoxicant is a class C felony.

(d) For a conviction under this section the
sentence shall be [lists sentences for convictions
under this section].

abuse of family or household members under HRS § 709-906 (Supp. 2004).[15]  116 Hawai\`i at 8, 169 P.3 955.  The court determined that a defendant's prior convictions were an element of the class C felony offense under HRS § 709-906(7).  Id. at 9, 169 P.3d at 961.  However, Murray is also distinguishable.

Murray involved a defendant who was charged with causing physical abuse to his wife "within two (2) years of a second or subsequent conviction of Abuse of Family or Household Member."  Id. at 5-6, 169 P.3 957-58.  This court held that whether Murray's violation of HRS § 709-906 was a "third or subsequent offense" was an element of the class C felony offense. Id. at 8, 169 P.3 955.  This court reasoned that a violation of HRS § 709-906 escalates from a petty misdemeanor to a class C felony "depending on whether the violation is a first offense,

---

[15]     HRS § 709-906 provides in relevant part:

(1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member

. . . .

(5) Abuse of a family or household member . . . shall be sentenced as follows:
     (a) For the first offense the person shall serve a minimum jail sentence of forty-eight hours; and
     (b) For a second offense that occurs within one year of the first conviction, the person shall be termed a 'repeat offender' and serve a minimum jail sentence of thirty days . . . .

(7) For a third or any subsequent offense that occurs within two years of a second or subsequent conviction, the person shall be charged with a class C felony.

second offense, or third or any subsequent offense that occurs within two years of a second or subsequent conviction." Id. at 8, 169 P.3d at 960.

This court held that when a definition of the offense requires a prior conviction to have occurred within a certain number of years, it is intrinsic to the crime and is an attendant circumstance. Id. at 9, 169 P.3d at 961. As this court stated, "[whether the offense] was a third or any subsequent offense that occur[red] within two years of a second or subsequent conviction" defines the felony offense of HRS § 709-906(7) as opposed to the misdemeanor offenses set forth in § 709-906(5)(a) and (b)." Id. at 8, 169 P.3d at 960. Thus, the reference to a "prior conviction set forth in HRS § 709-906(7) is 'specified by the definition of the offense[.]'" Id. (citing HRS § 702-205 and brackets in original). This is not the situation in the instant case, and thus, Murray is distinguishable.

In conclusion, we hold that a prior methamphetamine conviction under HRS § 712-1240.7 is a sentencing enhancement factor and not an element of the offense. Accordingly, the circuit court erred by reading to the jury the stipulated language relating to Wagner's prior conviction. Instead, Wagner's prior conviction should only have been utilized by the court as a sentencing enhancement factor. Under the harmless

25

error standard, the appellate court "must determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Kassebeer, 118 Hawai'i 493, 505, 193 P.3d 409, 421 (2008) (internal quotation marks and citation omitted). "If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside." State v. Gano, 92 Hawai'i 161, 176, 988 P.2d 1153, 1168 (1999) (internal quotation marks and citation omitted). Here, the jury's knowledge of Wagner's prior conviction could have prejudiced the jury and contributed to its decision to convict Wagner in the instant case. Thus, the error is not harmless beyond a reasonable doubt.

Although we need not address most of the remaining issues raised by Wagner, we must consider whether there was sufficient evidence to support his convictions. In reviewing the sufficiency of the evidence, a court must view the evidence in the light most favorable to the prosecution. State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981). "The jury, as the trier of fact, is the sole judge of the credibility of witnesses or the weight of the evidence." Id. at 637-38, 633 P.2d at 1117.

In the instant case, viewing the evidence in the light

26

most favorable to the prosecution, the record contains substantial evidence sufficient to support a jury verdict for methamphetamine trafficking in the first degree and prohibited acts related to drug paraphernalia.  For Wagner to be convicted of methamphetamine trafficking, the State had to prove that Wagner knowingly possessed one ounce or more of methamphetamine. See HRS § 712-1240.7(1)(a).[15]  For Wagner to be convicted of prohibited acts related to drug paraphernalia, the State had to prove that Wagner possessed with intent to use "drug paraphernalia to . . . prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance."  HRS § 329-43.5(a).[16]

---

[15]     HRS § 712-1240.7(1)(a) (2006) ("Methamphetamine trafficking in the first degree") provides:

> (1) A person commits the offense of methamphetamine trafficking in the first degree if the person knowingly:
>
>> (a) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of one ounce or more containing methamphetamine or any of its salts, isomers, and salts of isomers[.]

[16]     HRS § 329-43.5 (1988) ("Prohibited acts related to drug paraphernalia") provides in pertinent part:

> (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise

(continued...)

The State's evidence at trial established that approximately 45.38 grams, or about 1.6 ounces of methamphetamine, was recovered from Wagner's room, along with items including a methamphetamine smoking pipe, zip packets, a digital scale and angle cut straw.[17]  In addition, police also recovered other items from the room which support the inference that Wagner knowingly possessed the methamphetamine and drug paraphernalia, including $10,000 in a "drug roll"[18] from one of Wagner's shirt pockets, $967 found on Wagner's bed, a wallet containing Wagner's identification documents, a notebook with drug slang terms written inside, and multiple cell phones with phone numbers affixed to the exterior (which Wagner admitted to possessing, but denied knowing why the phone numbers were taped to the exterior).

Wagner argues that there was not substantial evidence

---

[16](...continued)
      introduce into the human body a controlled substance
      in violation of this chapter.

[17]      These items meet the statutory definition of "drug paraphernalia"--the scale and straw can be used to "prepare, test," and "analyze" the methamphetamine; the zip packets to "pack, repack, store," and "contain" the methamphetamine; and the pipe to "ingest, inhale, or otherwise introduce" methamphetamine "into the human body."  HRS § 329-43.5(a).
      A police officer testified at trial that the digital scale could be used to weigh the drugs, and that the angle-cut scoop straw could be used to "scoop the methamphetamine out from within one zip packet, put it on the scale to weigh[] it, and then remove that and put it inside another baggie so that the weight measurement [was] correct."

[18]      A police officer testified at trial that the way the money was "folded and the rubber bands are applied," indicated that the money was a "drug roll."

because Pea "admitted to the charge [regarding the contraband]." This argument is not persuasive, because the "test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." Richie, 88 Hawai'i at 33, 960 P.2d at 1241. Even though a police officer testified that Pea did take responsibility for the offenses of drug paraphernalia and promoting a dangerous drug, there is still substantial evidence to support the fact-finder's conclusion that Wagner also possessed over one ounce of methamphetamine and several items of drug paraphernalia. Thus, the ICA did not err in concluding that "the record contains sufficient and substantial evidence to support the jury verdict."

## IV. Conclusion

For the foregoing reasons, the circuit court erred in construing Wagner's prior conviction as an element of the offense, rather than a sentencing enhancement factor, and the ICA erred in affirming the circuit court's judgment of conviction and sentence. Accordingly, we vacate the ICA's January 26, 2016 judgment on appeal, which affirmed the circuit court's

November 19, 2012 judgment of conviction and sentence, and remand

this case to the circuit court for a new trial.[19]

| | |
|---|---|
| John A. Wagner,<br>petitioner, pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Mark D. Disher<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |



---

[19] On remand, the circuit court should consider the applicability of Act 231 and its amendment of HRS § 712-1240.7. See 2016 Haw. Sess. Laws Act 231 §§ 52 at 763-64; 70 at 775-76.